1
2
3
4

UNITED STATES DISTRICT COURT

5

DISTRICT OF NEVADA

6

* * *

7

BOARD OF TRUSTEES OF THE
CONSTRUCTION INDUSTRY AND
LABORERS HEALTH AND WELFARE
TRUST, et al.,

Case No.2:23-CV-830  JCM (DJA)

8
9

ORDER

Plaintiff(s),

10
11

v.

12

BOTTOM LINE CONSTRUCTION,

Defendant(s).

13
14
15

Presently before the court is the plaintiffs'[1] Rule 55(b)(2) motion for default judgment

16

against the defendant, Bottom Line Construction.  (ECF No. 7).  The court clerk entered default

17

judgment on the plaintiffs' motion.  (ECF No. 8).  For the reasons stated below, the court vacates

18

the clerk's entry of default judgment and grants the plaintiffs' motion for default judgment.

19

**I.      Background**

20

This action arises under the Employment Retirement Income Security Act of 1974

21

("ERISA"), 29 U.S.C. §§ 1001 to 1500.  (ECF No. 1).  The plaintiffs are trust fund entities and

22

defendant Bottom Line Construction is an employer that entered into a collective bargaining

23

agreement ("CBA") with Construction Industry and Laborer's Union Local 872.  (*Id.* at 2).  The

24

CBA, trust agreements, and 29 U.S.C. § 1145 require Bottom Line, as an employer, to make timely

25

contributions to the trust funds on behalf of each employee who performs work covered by the

26
27

[1] Board of Trustees of the Construction Industry and Laborers Health and Welfare Trust,
Board of Trustees of the Construction Industry and Laborers Joint Pension Trust, Board of Trustees
of the Construction Industry and Laborers Vacation Trust, and Board of Trustees of the Southern
Nevada Laborers Local 872 Training Trust.

28

1    CBA.  (*See generally id.*).  The plaintiffs bring a sole claim against Bottom Line—ERISA

2    delinquent contributions for Bottom Line's failure to remit employee benefit contributions to the

3    trust funds.  (*Id.*).

4        The plaintiffs served Bottom Line on June 11, 2023.  (ECF No. 4).  Bottom Line did not

5    answer or otherwise appear, and the plaintiffs moved for entry of clerk's default.  (ECF No. 5).

6    The clerk entered default on August 2, 2023.  (ECF No. 6).  Thereafter, the plaintiffs moved this

7    court for default judgment under Federal Rule of Civil Procedure 55(b)(2), requesting the

8    delinquent contributions, interest, liquidated damages, audit fees, reasonable attorney's fees, and

9    attorney's fees to cover the future costs of collection.  (ECF No. 7).  Even though the plaintiffs'

10   motion was made under Rule 55(b)(2) (*court's* entry of default judgment) and requested a damages

11   amount not for sum certain, the clerk entered default judgment.  (ECF No. 8).  The court therefore

12   vacates the clerk's entry of default judgment and discusses the merits of plaintiffs' motion for

13   default judgment below.

14   **II.    Clerk's Default Judgment**

15       Rule 55(b)(1) allows the clerk to enter default judgment "*on the plaintiff's request*," if the

16   plaintiff's "claim is for sum certain or a sum that can be made certain by computation."  FED. R.

17   CIV. P. 55(b)(1) (emphasis added).  "*In all other cases*, the party *must* apply to the court for a

18   default judgment."  FED. R. CIV. P. 55(b)(2) (emphasis added).  There are thus at least two

19   impediments to the clerk entering default judgment in this case—first, the plaintiffs did not request

20   a clerk's entry of default and second, the requested relief was not for sum certain.

21       The plain language of Rule 55(b)(1) limits clerks' entries of default judgment to instances

22   where it is requested by the plaintiff.  This court's local rules also limit the clerk's ability to enter

23   default judgment to "the circumstances authorized by Fed. R. Civ. P. 55(b)(1)," and does not

24   provide that clerks may enter default judgment under Rule 55(b)(2).  LR 77-1.  In this case, the

25   plaintiffs' motion for default judgment cites Rule 55(b)(2) only and does not request a clerk's entry

26   of default judgment.  (ECF No. 7).

27   . . .

28   . . .

It is also generally accepted[2] that, under the sum certain rule, a request for "reasonable" attorney's fees "prevents the clerk from entering a judgment under Rule 55(b)(1)" because what is "reasonable" must be decided by the court.  10A Wright & Miller, Federal Practice and Procedure § 2683 (4th ed. 2024).  Rule 55 "carefully limits the clerk's authority to those cases where entry of judgment is purely a ministerial act, since sound policy dictates that the clerk should not be invested with discretionary power."  *Combs*, 105 F.R.D. at 474 (cleaned up) (citations omitted).  ERISA allows the court to award "*reasonable* attorney's fees and costs," 29 U.S.C. § 1132(g)(2) (emphasis added), and the reasonableness of fees is a "judgment call which only the court can make."  *Combs*, 105 F.R.D. at 475.  The clerk was therefore without authority to enter default judgment in this case.

Rule 60(b) allows a court to "relieve a party . . . from a final judgment . . . for mistake, inadvertence, surprise, or excusable neglect;" if "the judgment is void;" or for "any other reason that justifies relief."  The Ninth Circuit has explained that, although Rule 60(b) states that a judge may vacate a judgment "on motion," it does not state "whether the motion must be by a party or can be *sua sponte*."  *Kingviion Pay-Per-View v. Lake Alice Bar*, 168 F.3d 347, 351 (9th Cir. 1999).  The court therefore construed Rule 60(b) as allowing the district court to vacate a judgment on its own motion because allowing a "judge to repair mistakes in default judgments more than ten days old, in the fortunate circumstances where the judge happens to notice them" serves the interests of justice.  *Id.* at 352.

But the Ninth Circuit also held that if the court reduces the judgment award, the party in whose favor judgment was entered must be given notice and an opportunity to be heard as a "judgment is property, so taking it away requires due process of law."  *Id.*  As this court is not reducing the judgment amount in this case,[3] it finds that there are no due process concerns here.  Accordingly, for the reasons set forth above, the clerk's entry of default judgment (ECF No. 8) is

---

[2] *E.g.*, *Combs v. Coal & Min. Mgmt. Servs., Inc.*, 105 F.R.D. 472, 475 (D.D.C. 1984) (citing cases); *Branded Online Inc. v. Holden LLC*, No. SACV150390DOCDFMX, 2016 WL 8849024, at *1 (C.D. Cal. Jan. 8, 2016); *Phillips 66 v. Grainer*, No. 1:13–cv–1890–LJO–BAM, 2015 WL 3797396, at *2 (E.D. Cal. June 18, 2015).

[3] *See infra* Section III.B.2.

1    vacated under Rule 60(b).

2    **III.    Motion for Default Judgment**

3           The plaintiffs request affirmative relief in the form of monetary damages and has properly

4    complied with the requirements for entry of a default judgment by first applying for—and

5    obtaining—a clerk's entry of default under Rule 55(a), and then moving for entry of a default

6    judgment under Rule 55(b)(2).  The court may therefore consider the merits of their motion.

7           A.    Legal Standard

8           Under Federal Rule of Civil Procedure 55(b), after the court clerk has entered default, the

9    party seeking affirmative relief may move for default judgment.  *Eitel v. McCool*, 782 F.2d 1470,

10   1471 (9th Cir. 1986); *Aldabe v. Aldabe*, 616 F.3d 1089, 1092 (9th Cir. 1980).  Default judgment

11   is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed

12   to plead or otherwise defend, and that failure is shown by affidavit or otherwise."  FED. R. CIV. P.

13   55(a).  There is no right to the entry of default judgment, and the matter is committed to the district

14   court's discretion.  *See Draper v. Coombes*, 792 F.2d 915, 924 (9th Cir. 1986); *Aldabe*, 616 F.2d

15   at 1092.

16          When exercising its discretion to grant default judgment, the court considers seven factors:

17   (1) the possibility of prejudice to plaintiff if default judgment is not entered; (2) the merits of the

18   claims; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) the possibility

19   of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7)

20   the policy favoring a decision on the merits.  *Eitel*, 782 F.2d at 1471–72.  When applying the *Eitel*

21   factors, the factual allegations of the complaint, except those relating to the amount of damages,

22   are taken as true.  *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *Geddes

23   v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).  "[D]efault judgments are more often

24   granted than denied."  *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999).

25          B.    Discussion

26               1.    *Entry of Default Judgment*

27          After considering the *Eitel* factors, the court finds that the plaintiffs are entitled to default

28   judgment.  The first factor "considers whether the plaintiff will suffer prejudice if default judgment

is not entered." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Given Bottom Line's failure to appear in this lawsuit and the plaintiffs' lack of alternative avenues of recovery, they will suffer prejudice if default judgment is not entered. This factor weighs in favor of default judgment.

Factors two and three also support default judgment. The complaint alleges a sole claim for relief—ERISA delinquent contributions under 29 U.S.C. § 1145. (ECF No. 1). "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan . . . shall, to the extent not inconsistent with law, make such contributions . . . ." 29 U.S.C. § 1145. If the employer fails to do so, a plaintiff may bring an action under 29 U.S.C. § 1132 (d)(1) to recover the unpaid contributions.

The plaintiffs allege that Bottom Line has failed to meet its contribution obligations under both ERISA, the CBA, and the trust agreements. (*See generally* ECF No. 1). The plaintiffs' complaint thus states a claim upon which they may recover. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (explaining that a complaint is sufficient if it alleges a claim upon which the plaintiffs can recover). Furthermore, the plaintiffs' claim is meritorious against Bottom Line because Bottom Line has admitted liability for the claim asserted in the complaint by defaulting. Thus, the plaintiffs' allegations are also substantiated by the record before the court.

The fourth *Eitel* factor balances the sum of money at stake with the "seriousness of the action." *Lehman Bros. Holdings Inc. v. Bayporte Enters., Inc.*, No. C 11-0961-CW, 2011 WL 6141079, at *7 N.D. Cal. Oct. 7, 2011. "If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted." *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010). The plaintiffs request approximately $15,639 in damages. (ECF No. 7, at 11). This amount is dictated largely by ERISA and the CBA. As the complaint and factual record sufficiently support the plaintiffs' claimed damages, this factor favors entry of default judgment. *See Eitel*, 782 F.2d at 1471.

The sixth *Eitel* factor considers excusable neglect. 782 F.2d at 1472. This factor favors entry of default judgment when the defendant has been properly served or the plaintiff shows that the defendant is aware of the lawsuit and failed to answer. *Meadows v. Dominican Republic*, 817

- 5 -

1    F.2d 517, 521 (9th Cir. 1987).  Bottom Line was properly served in this case but has failed to

2    answer or otherwise appear.  (ECF No. 3).  Accordingly, the court finds that the plaintiffs have

3    demonstrated that Bottom Line's failure to appear is not the result of excusable neglect.  *See id.*

4          Finally, though there is a policy to decide cases "on the merits whenever reasonably

5    possible," *Eitel*, 782 F.2d at 1472, it is not reasonably possible when the defendants fail to answer

6    a complaint.  "Thus, the preference to decide a case on the merits does not preclude a court from

7    granting default judgment."  *PepsiCo*, 238 F. Supp.2d at 1177.  The *Eitel* factors overwhelmingly

8    support entry of default judgment, and the court finds that default judgment in favor of the

9    plaintiffs is warranted.

10                    *2.    Requested Relief*

11         Once liability is established by default judgment, the plaintiff must establish that the

12   requested relief is appropriate.  *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

13   In an action to recover delinquent ERISA contributions, the court may award the following:

14               (A) the unpaid contributions,

15               (B) interest on the unpaid contributions,

16               (C) an amount equal to the greater of—

17                    (i) interest on the unpaid contributions, or

18               (ii) liquidated damages provided for under the plan in an amount not
19               in excess of 20 percent (or such higher percentage as may be
                 permitted under Federal or State law) of the amount determined by
20               the court under subparagraph (A),

21               (D) reasonable attorney's fees and costs of the action, to be paid by
                 the defendant, and

22               (E) such other legal or equitable relief as the court deems
23               appropriate.

24   29 U.S.C. § 1132(g)(2).  An award under section 1132(g)(2) is mandatory if: (1) the employer is

25   delinquent at the time the action is filed; (2) the district court has entered a judgment against the

26   employer; and (3) the plan provides for such an award.  *Northwest Adm'rs, Inc. v. Albertson's, Inc.*,

27   104 F.3d 253, 257 (9th Cir.1996) (citing *Idaho Plumbers and Pipefitters Health and Welfare Fund*

28   *v. United Mechanical Contractors, Inc.*, 875 F.2d 212, 215–16 (9th Cir.1989)).

The plaintiffs seek a total of $15,639 in damages.  (ECF No. 7, at 13).  This amount includes the delinquent contributions, interest, liquidated damages, audit fees, reasonable attorney's fees, and future attorney's fees.  (*Id.*).  The court finds that the plaintiffs are indeed entitled to an award under section 1132(g)(2) and the governing documents and discusses each of the requested awards in turn.

The plaintiffs seek $2,124 in delinquent contributions for the period of August 16, 2021, to March 31, 2022.  (ECF No. 7, at 5).  The request is supported by Christopher M. Humes's declaration, and an audit conducted by an independent auditor.  (ECF No. 7-1, at 5; Pls.' Ex 6, ECF No. 7-1, at 66).[4]  The court therefore awards the requested unpaid contributions in full.

The plaintiffs seek $655 in interest and $655 in liquidated damages.  (ECF No. 7, at 5). The interest amount was calculated using a 14% annual rate from the date the contributions became delinquent to February 12, 2024 (the date the plaintiffs anticipated that it would receive judgment). (*Id.* at 5; Pls.' Ex. 6, ECF No. 7-1, at 66).  The plaintiffs' calculation is consistent with the terms of the trust agreements, which specify that simple interest shall be awarded at the annual rate of 14%.  (Pls.' Ex. 3, *id.* at 35; Pls.' Ex. 4, *id.* at 47; Pls.' Ex. 5, *id.* at 59).  This results in $0.81 of interest accruing per day.  The court also adds $105.30[5] in interest to account for the interest accrued from February 12, 2024, to the date of *this* judgment (June 21, 2024).  This results in a new total interest amount of $760.30.

Section 1132(g)(2)(C) instructs the court to award the greater of either the interest amount or 20% of delinquent contributions as liquidated damages. Because 20% of the delinquent contributions is less than the interest amount, the liquidated damages amount shall be $760.30 (the interest).  The court therefore finds that a total of $1,520.60[6] must be awarded as interest *and* liquidated damages.

. . .

---

[4] The court reminds the plaintiffs that under LR IC 2-2(a)(3)(A), each exhibit must be attached as a separate file.

[5] There are 130 days between February 12, 2024, and June 21, 2024. 130 x $0.81 = $105.30.

[6] $760.30 + $760.30 = $1,520.60

The plaintiffs seek $1,765 to cover audit fees, $5,440 in reasonable attorney's fees and costs, and an additional $5,000 to cover the future expenses of execution.  (ECF No. 7, at 6).  The court finds that the requested audit fees and additional $5,000 to cover future legal expenses are warranted under 29 U.S.C. § 1132(g)(2)(E) and supported by the governing documents and Humes's declaration.  (ECF No. 7-1, at 5; Pls.' Ex. 2, *id.* at 9, 28).

Having prevailed in this action for unpaid and late contributions, the plaintiffs are also entitled to reasonable attorney's fees and costs.  29 U.S.C. § 1132(g)(2)(D).  Reasonable attorney's fees are calculated via the "lodestar" method, which is obtained by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate.  *Van Gerwen v. Guarantee Mutual Life Co.*, 214 F.3d 1041, 1045 (9th Cir.2000) (applying lodestar to an ERISA action).  In calculating the lodestar number, the court must determine a reasonable rate and a reasonable number of hours for each attorney.  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir.1986), *reh'g denied, amended on other grounds*, 808 F.2d 1373 (9th Cir.1987).

The Supreme Court has held that reasonable attorney's fees must "be calculated according to the prevailing market rates in the relevant community," considering the fees charged by "lawyers of reasonably comparable skill, experience, and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895-96 n. 11 (1984).  "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed . . . [w]here the documentation of hours is inadequate, the district court may reduce the award accordingly."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

The plaintiffs seek $5,440 in reasonable attorney's fees for time spent drafting and filing the complaint and related documents (1.9 hours), preparing and filing the motion for default (1.3 hours), preparing and filing the motion for default judgment and accompanying exhibits (11.3 hours), and having various related inter- and intra-office communications (2.3 hours).  (Pls.' Ex. 8, ECF No. 7-1, at 78).  Humes declares that he is an attorney at Brownstein Hyatt Farber Schreck, LLP, and the plaintiffs' attorney.  (Humes Dec., ECF No. 7-1, at 5).  He requests rates of $330 to $360 for attorneys and $110 to $220 for paralegals.  (*Id.* at 4).  He declares that these rates are "based on the discounted billing rates for [the firm's] Las Vegas employee benefits and ERISA practice."  (*Id.*).

The court finds the number of hours expended, and the hourly rates, to be reasonable.  The rates are in line with the prevailing rates for ERISA cases in this district.[7]  *E.g.*, *Trustees of Operating Engineers Pension Tr. v. Diversified Concrete Cutting, Inc.*, No. 2:17-CV-2686-APG-GWF, 2018 WL 1996458, at *4 (D. Nev. Apr. 27, 2018).  In summary, the court awards the plaintiffs the following damages against Bottom Line:

| | |
|---|---|
| Delinquent Contributions | $2,124 |
| Interest | $760.30 |
| Liquidated Damages | $760.30 |
| Audit Fees | $1,765 |
| Reasonable Attorney's Fees | $5,440 |
| Future Attorney's Fees | $5,000 |
| **Total:** | **$15,849.60** |

**IV.   Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the clerk's entry of default judgment (ECF No. 8) be, and the same hereby is, VACATED and STRICKEN from the docket.

IT IS FURTHER ORDERED that the plaintiffs' writ of execution (ECF No. 9) be, and the same hereby is, DENIED *without* prejudice.

IT IS FURTHER ORDERED that the plaintiffs' motion for default judgment (ECF No. 7) be, and the same hereby is, GRANTED, consistent with the foregoing.

. . .

. . .

. . .

. . .

. . .

---

[7] However, the court reminds the plaintiffs' attorneys that it should provide the court with the "prevailing market rates in the relevant community" and information regarding the attorneys' "skill, experience, and reputation" when requesting reasonable fees.  *Blum*, 465 U.S. at 895-96 n. 11.

1         Judgment is hereby entered in favor of the plaintiffs and against defendant Bottom Line

2    Construction in the amount of **$15,849.60.**  The full judgment amount of $15,849.60 shall carry

3    interest at the statutory post-judgment rate until paid in full.  The clerk is INSTRUCTED to enter

4    judgment accordingly.

5         DATED June 24, 2024.

6

7                                                UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 10 -